## M. C. DAWSON v. THE STATE.

### No. 3006.   Decided February 18, 1914.

**1.—Occupation—Intoxicating   Liquors—Local   Option—Evidence—Other Transactions.**

Upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, there was no error in admitting testimony of deliveries of intoxicating liquor to defendant during the time the alleged offense occurred.

**2.—Same—Occupation—Charge of Court.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the court defined said occupation according to approved precedent, there was no error.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the evidence sustained the conviction, under a proper charge of the court, there was no reversible error.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of pursuing the occupation of selling in-toxicating liquors in local option territory; penalty, three and one-half years imprisonment in the penitentiary.

The opinion states the case.

*Elliott & Larsen,* for appellant.—On question of occupation: Oliver v. State, 152 S. W. Rep., 1006.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for unlawfully engaging in and pursuing the business of selling intoxicating liquors in prohibition territory and his punishment fixed at three and one-half years confinement in the penitentiary.

The evidence in this case was amply sufficient to show this state of facts: That appellant ran a cold drink stand and sold some merchandise and perhaps ran a wood yard in connection with his business, in Paris, Lamar County, where prohibition was in force. The indictment charges that appellant from January, 1913, down to the filing of the indictment and prior to the filing of the indictment, which was on October 15, 1913, unlawfully pursued the occupation and was engaged in the business of selling intoxicating liquors. And alleged a considerable number of specific sales to have been made on certain dates within that time. One of the agents of the Wells-Fargo Express Company produced his records of the entry of intoxicating liquors received by it at Paris and delivered to appellant as follows: One cask (120 pints) of beer on June 7, 1913. Three casks (360 pints) on June 30. The agent of another express company at Paris produced his record and showed the following delivery of liquors by him from said express company to appellant: On May 5, 1913, one cask (120 pints) of beer; May 15, the same quantity; May 21, the same quantity; May 29, the same quantity; June 2, the same quantity; June 9, four quarts liquor; June 28, one cask (120 pints) of beer; July 15, 48 pints of beer; August 6, one cask (120 pints); August 16, 48 pints of beer; August 22, 120 pints of beer; September 13, one cask (120 pints) of beer; September 29, 4 quarts of whisky and 48 pints of beer; October 11, 120 pints of beer. W. H. Carey, to whom several of the sales were alleged to have been made testified that on June 28, 1913, he bought two bottles of beer from appellant. About July 1st another two bottles of beer, and at another time on the same day, another bottle of beer from the woman who was in charge of appellant's business at the time he was absent, and later that night on the same day he and Andy Watkins bought two bottles of beer from appellant, and, still later, he and said Watkins each bought another bottle. Said Watkins testified that on the early part of the night of July 1, 1913, he bought two bottles of beer from appellant and later the same night he went back and bought two other bottles of beer from him. John Howerton, the chief of police of the city of Paris, and W. A. Lain, the sheriff, both, in effect, testified that just after the latter purchases by said two witnesses they got a search warrant and searched appellant's place of business; that they found bottles of beer in the back part of his house and some in his ice cooler, and a wagon load or more of empty beer bottles in his back yard.

There was other corroborating evidence of appellant's sales and that he had and kept beer and some whisky at his said place.

Appellant claimed that he got all this liquor, either for his own personal use, or for various persons for whom he ordered it, and denied that he made any of the sales or that he kept whisky or beer for sale during said time.

Appellant objected to the testimony by the express agents of the deliveries of beer and whisky to appellant as shown by their testimony. All of this evidence was clearly admissible. It has been long so held by this court in a uniform holding. It is unnecessary to cite the cases.

Appellant objected to the charge of the court in telling the jury what constituted an engaging in the business. The court gave just such charge as has many times been held sufficient on this question. It is needless to cite the cases again. The court charged: "4th. You are further instructed that to follow the occupation or engage in the business of selling intoxicating liquors, means the party must be engaged in that business either as his principal business or in some way as a business proposition." Appellant's only objection is to that part of this charge, "because it does not sufficiently describe or explain what would constitute an engaging in the business."

The court's charge was full, fair and complete in accordance with the law. The evidence was clearly sufficient to sustain the verdict. There is no error in the case and the judgment is affirmed.

*Affirmed.*